**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MALCOLM LEIGH and LORAINE LEIGH, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 22-cv-06119 |
| v. | ) ) | Judge John Robert Blakey |
| CAMP ZEST, INC, d/b/a MAKANDA INN & COTTAGES, GREGORY WELLMAN, Individually, and SHAUNA WELLMAN, Individually, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs Malcolm Leigh and Loraine Leigh sued Defendants Camp Zest, Inc.,
d/b/a/ Makanda Inn & Cottages ("Makanda Inn"), Gregory Wellman, and Shauna
Wellman for violations of the Fair Labor Standards Act ("FLSA"), the Illinois
Minimum Wage Law ("IMWL"), the Illinois Wage Payment and Collection Act
("IWPCA"), and breach of contract. [30]. Defendants move for summary judgment.
[81]. For the reasons explained below, this Court denies Defendants' motion.

## I. Background[1]

Gregory Wellman and Shauna Wellman are owners of Makanda Inn, a bed and
breakfast within the Shawnee National Forest in Makanda, Illinois. [96] ¶ 1. The
Wellmans live in Elk Grove Village, Illinois, more than a five-hour drive away from

---

[1] The Court draws these facts from the parties' Rule 56.1 Statements of Facts [82], [95], including
exhibits, and the parties' responses thereto [96], [99], where supported.

Makanda Inn. *Id.* ¶ 4. In May 2015, Gregory Wellman found Malcolm and Loraine Leigh offering their services on a working couples website, workingcouples.com, to operate a lodging facility. *Id.* ¶ 11. For the next several months, over many phone calls and e-mails, Gregory and Plaintiffs discussed the possibility of Plaintiffs working at Makanda Inn. *Id.* ¶ 12. Gregory and Plaintiffs' discussions continued until August that year, when Gregory and Plaintiffs drafted an agreement (the "Agreement") where Defendants would pay Malcolm a $2,000 monthly rate to manage Makanda Inn with Loraine's assistance for a year, with the possibility of additional compensation based upon Makanda Inn's performance. *Id.* ¶¶ 15, 16; [99] ¶ 6.

Together, Plaintiffs worked at Makanda Inn, handling guest reservations, customer inquiries, budgeting, food shopping and preparation, cooking and serving guests, housekeeping, overall maintenance of the property, bookkeeping, marketing, and other duties as innkeepers. [96] ¶ 21. Consistent with the Agreement, Plaintiffs lived on-site at Makanda Inn while working there. *Id.* ¶ 36. When the Agreement expired after a 12-month term, Plaintiffs continued living and working at Makanda Inn. *Id.* ¶ 22.

In January 2021, Defendants terminated their relationship with Plaintiffs. [99] ¶ 41. Plaintiffs sued, alleging a failure to pay minimum wage under the FLSA (Count I), failure to pay overtime wages under the FLSA (Count II), failure to pay minimum wage under the IMWL (Count III), failure to pay overtime wages under the IMWL (Count IV), violation of the IWPCA (Count V), and breach of contract (Count

VI). Based upon the record, Defendants seek summary judgment on all counts, [81]. Plaintiffs oppose the motion, [94], and the parties have fully briefed the matter.

## II.    Legal Standard

Summary judgment may be properly granted where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On a motion for summary judgment, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co.*, Inc., 910 F.3d 1016, 1021–22 (7th Cir. 2018). To meet this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019). A mere "scintilla of evidence" supporting the non-movant's position does not suffice; rather, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

3

### III. Discussion

Defendants seek summary judgment on all counts. The Court discusses each issue in turn.

### A. FLSA

The parties primarily dispute whether Defendants are subject to the requirements of the FLSA, and therefore required to meet the minimum wage and overtime requirements set forth in 29 USC §§ 206 and 207. The Court must address three threshold issues: (1) whether Makanda Inn or the Plaintiffs are covered under the FLSA; (2) whether Defendants are "employers" under the FLSA; and (3) whether Plaintiffs are "employees," rather than individual contractors. *Harris v. Skokie Maid and Cleaning Service, Ltd.*, No. 11 C 8688, 2013 WL 3506149, at *4 (N.D. Ill. July 11, 2013). Defendants argue Makanda Inn is not an enterprise covered under the FLSA, that Shauna and Gregory Wellman are not "employers" under the FLSA, and that Malcolm and Loraine Leigh are not "employees" under the FLSA.

### 1. Individual Coverage

Under the FLSA, employers must pay their employees a minimum wage and overtime compensation for any workweek where the employees are: (1) engaged in commerce or in the production of goods for commerce (individual coverage); or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce (enterprise coverage). 29 U.S.C. § 206(a), 207(a); *Villareal v. El Chile, Inc.*, 776 F.Supp.2d 778, 790 (N.D. Ill. 2011). Here, Plaintiffs do not dispute that

Defendants are not a covered enterprise under the FLSA and instead, argue that Plaintiffs are protected under the FLSA as covered individuals.

Individual coverage protects employees "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). To assess this, courts look at the acts of the employee. 29 U.S.C. § 206(a); *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, (1959). Qualifying employees must be engaged in commerce; it is not enough that their activities merely affect commerce. *Mitchell*, 358 U.S. at 211. For an employee's work to be engaged in commerce, her work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955).

Here, Plaintiffs' transaction reports show Plaintiffs regularly ordered business cards and branded merchandise from a national wholesaler, linens from a Pennsylvania supplier, bath soaps from a New Jersey vendor, and cleaning supplies from a Minnesota retailer. [95-3]. Plaintiffs here also purchased online digital advertisements on Home Away, Trip Advisor, Indeed, Google, and Facebook to attract customers both in and out of state.[2] The Makanda Inn phone records also show that Plaintiffs regularly communicated with out-of-state customers. [95-4].

Based upon the record, factual issues remain as to whether Plaintiffs' activities were sufficiently engaged in interstate commerce to preclude summary judgment that Plaintiffs are not covered individuals under the FLSA.

---

[2] The internet is an instrumentality of interstate commerce. *United States v. Chaparro*, 956 F.3d 462, 470 (7th Cir. 2020).

### 2. FLSA Employers

Next, Defendants argue they are not "employers" under the FLSA. For Defendants to be liable under the FLSA, "there must also be an employer-employee relationship" between Plaintiffs and Defendants. *Perez v. Super Maid, LLC*, 55 F.Supp.3d 1065, 1076 (N.D. Ill. 2014). The FLSA broadly defines employers as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under the FLSA, this employment relationship is defined "expansively" and with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). Accordingly, the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Id.*

Thus, courts evaluating employer status look to the economic realities of the circumstances, rather than technical common law concepts of agency. *Goldberg v. Whitaker*, 366 U.S. 28, 33 (1961); *Villareal v. El Chile, Inc.,* 776 F.Supp.2d 778, 785 (N.D. Ill. 2011) (Courts assess the "economic reality" of the working relationship to determine whether an individual is an employer under the FLSA.). The economic reality test assesses factors including whether the individual: "(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Nehmelman v. Penn Nat. Gaming, Inc.*, 790 F.Supp.2d 787, 795 (N.D. Ill. 2011).

Here, Defendants admit they "made decisions regarding Camp Zest engaging Malcolm as an independent contractor and terminating the independent contractor relationship with Malcolm," but deny they "made decisions regarding 'hiring' and 'firing'" of Plaintiffs. [99] ¶ 7. Defendants' use of the label "independent contractor" carries little weight in defining Plaintiffs' status as independent contractors; "after all, the purpose of the economic realities test is to set aside such conclusory classifications and evaluate the totality of circumstances bearing on the working relationship." *Solis v. Intern. Detective & Protective Services, Inc.*, 819 F.Supp.2d 740, 752 (N.D. Ill. 2014) (citing *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992)). Defendants insist "the record is completely devoid of any evidence whatsoever" they "hired and fired employees," [81] at 6, but both parties clearly dispute the factual circumstances around how the individual Defendants engaged Plaintiffs to begin working at Makanda Inn. [82] ¶ 41; [95] ¶ 5. The same is true for how Defendants terminated their relationship with Plaintiffs. [96] ¶ 77; [99] ¶ 41. Thus, the record precludes a finding at this stage whether Defendants could hire and fire Plaintiffs.

Similarly, Defendants insist they were never in a position to exercise close control or supervision over Plaintiffs' work. Defendants note that "Gregory called Malcolm only about 100 times between 2018 and 2021 or over the course of 1,096 days, and that Shauna only spoke to Plaintiffs via telephone about seven times over the same period." [98] at 9. Yet individuals "may be found to be employers even without the 'continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control.'" *Villareal v. El Chile, Inc.*, 776 F.Supp.2d 778,

7

786 (N.D. Ill. 2011) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). Control "may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitation on control does not diminish the significance of its existence." *Id.* (citations omitted).

Here, the parties also dispute Defendants' degree of control and supervision over Plaintiffs. Plaintiffs point to instances where they sought approval from Defendants, or where Gregory Wellman directed Plaintiffs to perform certain tasks. For example, Gregory Wellman emailed Plaintiffs to "hold off until" Defendants "come down in a few weeks" in response to a proposed decoration. [95-6] at 4045. In another email, Gregory directed Plaintiffs to "run a 1099 report and send" it to him so he could pass it to his accountant. [95-5] at 3941. Plaintiffs sent an email to Gregory for his approval to purchase an ice machine, to which he responded, "if it looks good buy it." [95-5] at 3964. On another occasion, Gregory directed Plaintiffs to review emails or Quickbook records for records relating to a collection proceeding. [95-5] at 3986. Moreover, the "economic reality" of Plaintiffs' routine daily work at Makanda Inn—handling reservations, housekeeping, cooking—may not require close daily supervision by employers. Given the parties' disputes over the factual record, Plaintiffs have established the existence of a triable issue of fact on this issue.

Defendants also insist "the record is completely devoid of any evidence whatsoever establishing" that Defendants "determined the rate and method of payment of employees." [81] at 6. Yet Defendants admit Gregory Wellman participated in the drafting of the August 2015 contract, which determined Plaintiffs'

pay and the parameters of their work at the Inn. [99] ¶ 6. Additionally, Defendants "admit Camp Zest paid Malcolm $2,000.00 each month pursuant to the express terms of the Agreement and $200.00 extra if the month had five weeks pursuant to the express terms of the parties (sic) agreement." [99] ¶ 33. The parties dispute whether the terms of the August 2015 contract continued to apply as Plaintiffs worked at Makanda Inn, and the circumstances around the "incentive compensation" that Plaintiffs may have been eligible for.

Based upon the significant disputes over material facts determining Defendants' status under the FLSA, Defendants' motion for summary judgment is denied on the issue of their individual personal liability.

### 3. FLSA Employees

Defendants also argue that Plaintiffs are not "employees" under the FLSA. For Defendants to be liable under the FLSA, there must also be an employer-employee relationship. *Perez*, 55 F.Supp.2d at 1076. An "employee" is defined as "any individual employed by an employer"; "to employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203.

Here again, the courts assess the "economic realities" of the situation to distinguish employees from independent contractors. *Perez*, 55 F.Supp.2d at 1076 (citing *Solis*, 819 F.Supp.2d at 749). The test analyzes whether individuals are "actually dependent upon the business to which they render service" and considers factors like: (1) the nature and degree of the alleged employer's control of the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit

9

or loss depending upon his or her managerial skill; (3) the alleged employee's own investment in equipment or materials required for the work or his or her employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an "integral part" of the alleged employer's business. *Id.* (citations omitted).

Based upon the record discussed below, the economic realities of Plaintiffs' work at Makanda Inn sufficiently support classification as employees such that this Court must deny Defendants' motion for summary judgment as to Counts I and II.

### a) Control

Evidence displaying an "employer's dominance over the 'manner and method' of how work is performed suggests control by an employer." *Harris v. Skokie Maid and Cleaning Service, Ltd.*, No. 11 C 8688, 2013 WL 3506149, at *7 (N.D. Ill. July 11, 2013) (quoting *Harper v. Wilson*, 302 F.Supp.2d 873, 878 (N.D. Ill. 2004)). As previously noted, emails between Plaintiffs and Gregory Wellman show Plaintiffs sought Greg's approval before performing certain tasks, or Gregory directed Plaintiffs to perform other tasks for him. Thus, this factor supports the theory that Plaintiffs were employees.

### b) Opportunity for Profit & Loss

An independent contractor "risks loss of an investment and has the opportunity to increase profits through managerial discretion." *Perez*, 55 F.Supp.3d at 1077 (citing *Secretary of Labor, U.S. Dept. of Labor v. Lauritzen*, 835 F.2d 1529,

1536 (7th Cir. 1987)). Strict prearranged pay scales and situations that do not afford workers "managerial discretion" to adjust their hours or work more efficiently eliminate the opportunity for those workers to realize increased profits by adjusting their own performance. *Id*. Though Plaintiffs admit Malcolm was eligible for "incentive compensation" based on Makanda Inn's overall performance, in addition to his $2,000 monthly pay, [96] ¶¶ 28, 29, there is "no corresponding possibility" for "worker loss." *Lauritzen*, 835 F.2d at 1536. A "reduction in money earned" is "not a loss sufficient to satisfy the criteria for independent contractor status." *Id*. Here, Plaintiffs never had to personally invest anything in Makanda Inn, [99] ¶ 37, and any "reduction in earnings" due to poor performance from the Inn is a "loss of wages, and not of an investment." *Lauritzen*, 835 F.2d at 1536.

### c) Relative Investment

Large personal investments are more representative of an independent contractor than an employee. Such investments include "large expenditures, such as risk capital, or capital investments, and not negligible items or labor itself." *Lauritzen,* 835 F.2d at 1537. Here, there is no dispute Plaintiffs never had to personally invest in Makanda Inn. [94] at 11; [98] at 10; [99] ¶ 37. The record evidence also shows that when the Makanda Inn bank account ran low, Gregory Wellman deposited funds into the account. [95-6] at 4085. Thus, this factor supports Plaintiffs' classification as employees.

11

### d) Special Skill

When an individual's work requires special skill, that individual is more likely to be an independent contractor. *Lauritzen*, 835 F.2d at 1537. But skills "are not the monopoly of independent contractors," as all jobs require some level of skill. *Id.* For instance, in *Bulaj v. Wilmette Real Estate & Mgmt. Co.*, an individual was tasked with cleaning, sweeping floors, mowing grass, unclogging toilets, changing light fixtures, and cleaning gutters. No. 09 CV 6263, 2010 WL 4237851, at *7 (N.D. Ill. Oct. 21, 2010). Additionally, this individual received training in "carpentry, plumbing, and electrical work," and changed pipes, electrical outlets, and repaired boilers, windows, and doors, at the employer's properties. *Id.* Despite this, the court still held that the individual's skill was not sufficiently "special" to find in favor of independent contractor status. *Id.*

Here, Plaintiffs handled customer inquiries, booked reservations at the inn, purchased online ads, performed bookkeeping and budgeting for the business, carried out housekeeping tasks, and cooked and served food to guests. [82] ¶ 21. While there is some skill involved in these tasks, like "effectively and efficiently cleaning," this work "surely does not rise to the level of complexity discussed above in *Bulaj*," like the carpentry and electrical work, "which still did not require special skill." *Harris*, 2013 WL 3506149, at *7. Plaintiffs' work at Makanda Inn "may be difficult and demanding, but it does not require special skill." *Id.*

### e) Permanence of the Working Relationship

The "more permanent the relationship, the more likely the worker is to be an employee." *Perez*, 55 F.Supp.3d at 1078 (citing *Schultz v. Capital Int'l Security, Inc.,* 466 F.3d 298, 309 (4th Cir. 2006)). This factor, more than any other, suggests Plaintiffs were "actually dependent upon the business to which they render service," weighing heavily in favor of employee status. *Id.* at 1076. Here, the undisputed facts show Plaintiffs worked at Makanda Inn from December 2015 to January 2021, a period of over five years. [96] ¶¶ 22, 23. Defendants insist the Agreement between the parties contained no provision that Plaintiffs could not work for any other entities, [99] ¶ 40, and indeed, Loraine provided accounting services to a family friend on a seasonal basis, once a year. [82] Ex. 7; 176:17–177:16. Yet, there is no dispute that Malcolm exclusively worked at Makanda Inn from December 2015 to January 2021, and that Loraine was otherwise working at Makanda Inn.

### f) Integral Part of the Business

Individuals are more likely to be employees if they perform "the primary work of the alleged employer." *Perez*, 55 F.Supp.3d at 1078 (quoting *Harper*, 302 F.Supp.2d at 879); *see also Lauritzen*, 835 F.2d at 1537–38 (holding migrant workers who harvested pickles for a business that sold pickles were integral to the operation). Here, the undisputed facts show Plaintiffs were responsible for handling customer inquiries, reservations, cooking for guests, cleaning, and restocking of supplies to fulfill their duties as innkeepers. [96] ¶ 21. Plaintiffs could not possibly perform the primary work of Makanda Inn more directly.

### B. IMWL and IWPCA

Defendants move for summary judgment on Plaintiffs' claims under the IMWL and IWPCA, noting that FLSA claims analyzed similarly to those under the IMWL and IWPCA. Courts have held that "the IMWL parallels the FLSA, and that the same analysis generally applies to both statutes." *Morgan v. SpeakEasy, LLC*, 625 F.Supp.2d 632, 650 (N.D. Ill. 2007). Likewise, the IWPCA claim is "intertwined" with the FLSA claims, "for the Illinois statute parallels the language of FLSA § 207(a)(1). *Turner v. The Saloon, Ltd.*, 491 F.Supp.2d 767, 770 (N.D. Ill. 2007). Illinois courts therefore "subject the state statute to the same interpretation and application as its federal counterpart." *Id.* (citing *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. Ct. 1987). Accordingly, Defendants' motion as to Counts III, IV, and V is denied for the same reasons already stated as to Plaintiffs' FLSA claims.

### C. Breach of Contract

Defendants argue Plaintiffs' breach of contract claim must be dismissed because Malcolm "was not an employee of Defendants" and thus cannot maintain a claim for "breach of a nonexistent employment agreement." [81] at 14. Defendants add that Lorraine "admits" she "never entered into a contract or agreement for employment." *Id.* at 15. But regardless of whether Plaintiffs were employees under the FLSA, the parties dispute whether the exact terms of the 2015 Agreement continued to bind the parties after 2016. [96] ¶¶ 23, 24. Even Defendants concede some form of agreement was in effect, writing they "tried to pay Malcolm incentive

14

compensation under the Agreement in January 2021." [81] at 15. Accordingly, the Court denies Defendants' motion for summary judgment as to Count VI.

## IV. Conclusion

For the reasons explained above, this Court denies Defendant's motion for summary judgment [81].

Dated: March 30, 2026

Entered:

John Robert Blakey
United States District Judge

15